Mathew, L. J.,
concurring, says:
“Then the last point is, that, granting that this property has been intended for guilding, and that the covenant has been entered into and been violated, still that is not the subject of compensation under Section 68 of the Lands Glauses Act. No case was.cited to us to justify such a conclusion. There have been a series of decisions brought before us> and though there has *405 been no precise decision on the subject, yet over and over again there is an intimation from the highest authority that a restrictive covenant of this sort is the subject of compensation under the Lands Clauses Act. It is extremely difficult to see why it should not be so. There is in this case a negative easement adding to the monetary value of the estate. Why that should not v ' the subject of compensation, it is difficult to conceive. The mant is entirely apart from and in addition to the rights of ublic as soon as statutory powers are obtained. Statutory .s were not intended to affect a covenant of this sort, which art of the value of the estate. ’ ’
It is also claimed that a restriction of this nature is not violated where the property is taken under the power of eminent domain, since the one contracting not to put the property to the restricted use is powerless to prevent it.
If this sort of a covenant is based on the duty to respect the terms of an agreement previously made, and qualifying the title by which the property is held, and is not based on the theory that it creates an interest in property “taken,” or an easement therein, the contention seems unanswerable; but if an equitable easement exists, then a right of property is taken, for which compensation must first be made under the constitutional provision safeguarding private property.
The negative character of this class of property rights obscures the question, yet it is as much a taking of property to take away light, air, view, or a right to restrict the improvements of the neighborhood as to take away a right-of-way across land, for these equally enhance the value of the property to which they are appurtenant.
The fact that the restricted owner is powerless to prevent an appropriation answers the charge of committing a breach of the covenant, but does not answer the constitutional requirement that property taken by the power of eminent domain for railroad purposes must be first paid for.
A distinction is sought to be drawn between those covenants which restrict the use so as to create an easement for light,-"air and view, and those which restrict property to residental purposes. The reason for this distinction is, that the appropriation of the land and its application to a railroad use might interfere with *406 such tangible rights as light and air, but “residence purposes” is said to be intangible, founded on taste and sentiment, and no property right is interfered with by putting property to railroad use. I am of opinion that the tangible nature of the property right involved in the restriction is immaterial, and only serves to obscure the legal question involved. The test is, whether the restrictive covenant is of value to the owner, whether it enhances the value of the property for the benefit of which it is made, and whether the owner suffers a monetary loss by the appropriation of that which is of value to him and is appurtenant to his property. If he does suffer such loss, his' property is “taken,” within the meaning of the constitutional provisions.
In United States v. Certain Lands, 112 Fed. Rep., 662, an allotment of lands had been made for residence purposes, as a place of summer resort, near the southerly end of Conanieut Island, in Narragansett Bay; and in every one of the deeds of the allotment were restrictive covenants against the erection and maintenance of any slaughterhouse, smith shop, steam engine, distillery, brewery or saloon, etc. The United States sought to appropriate a portion of these lots for the purpose of building thereon a national fortification, and instituted appropriation proceedings in the courts for that purpose. Each of the property owners in the allotment claimed compensation on the score of these restrictions, each claiming that the restrictions constituted an easement in the property sought to be appropriated, in favor of his lot or lots.
In a carefully considered opinion, Brown, D. J., says:
“The United States has not sought a decree of condemnation that, either in express terms or by necessary or probable inference, imposes upon these claimants what they have a present right to £orb:d. But it may be said that it is the acquiring by the United States of a right to do those things which these complainants have now a right to forbid, which in legal contemplation is the “taking,” and not the subsequent doing of,these things. But the right which the United States acquires is to do on the lands taken such of these things as are necessary and proper for national defense.
“Have these claimants any property rights, under these deeds, to prevent such a use? Upon a fair construction of the condition in question, must we not regard it as having reference merely to *407 the prohibition of sneh structures and such uses as might be made by private individuals in private business, and as having no reference whatever to such uses or structures as might be required for national defense?
“The restrictive clause, after enumerating various things, says ‘that no other noxious, dangerous, or offensive trade or business whatever shall be done,’ etc. This shows the intent of the framer of the condition, in intent which did not contemplate the contingency that at some time it might be necessary for the national government to erect and use upon one or more of these lots a smith shop, forge, furnace, steam engine, etc., for governmental purposes.
“Were we'dealing with a condition of a different character, such a building restriction appurtenant to the claimants’ estates, whereby their value was greatly enhanced through the fact that the light and air could not be cut off, or perhaps a fine prospect destroyed, a different question would be presented. If a claimant has a right to prevent the erection of a wall against his house, this right might equally well be invaded by the wall of a private house or the wall of a fortification. It might then be said that the claimant had an ordinary easement of light and air of prospect over another’s land, a property right of ordinary character; that he had a right, under existing laws, to acquire such an easement by contract with his neighbor; that to destroy it was to take it for public use. But the condition now before us is of a different character. It does not prohibit the erection of structures as such, nor does it preserve easements of light and air or of prospect. Even a hotel is nof prohibited. While we might say that the wall of a fortification was equivalent to a private wall, in cutting off air and light, we would not be justified in saying that the use by the government of any of the prohibited things, for purposes of coast defense is substantially equivalent to the use of them for private purposes. The condition has no reference to structures as structures, but rather has a reference to uses of the lands on the Highlands plat, and we would be going far beyond the bounds of common experience were we to say that what the government has acquired is, in substance, what was contemplated and provided against by the framers of this deed.
“* # * I think this ease might well be put upon the ground that the right acquired by the government does not appear to be in any substantial particular inconsistent with the provisions of this condition, or destructive thereof, and that for this reason there is no taking of the claimants’ property in this par-, ticular. But if we go further, and, taking a more literal view, say the condition does not provide against exactly what the *408 United States has now acquired the right to do, the case of the claimants is not yet clear.
“If we construe this language as the equivalent of an express condition that no act or use of this character, even if necessary for national defense, shall ever be done upon these lands, would not such a construction defeat itself by requiring us to hold the condition void as against public policy?
“It has been said that these claimants have a property right which is valuable, and which is appurtenant to their estates, namely, the right to enjoin all uses of the property inconsistent with these conditions. The difficulty seems to me to be in the contention that there can be any property right whatever, springing from private grant, that the lands of another shall not be used for necessary governmental purposes. Suppose a deed to contain the condition that the grantor’s-property shall never be used by the United States for. a fort, or by a state for a state capitol, armory or a school house, would not such a condition on its face be voi’d as against public policy? As each owner of land holds his deed subject to the divesting of his title through the action of the state or of the United States based on public necessity, can he .by any means, directly or indirectly, impose upon the state or the United States the burden of compensating him for damages resulting from that public use which does not directly invade his land? If the lands on the southern end of Conanicut Island were held in fee by a number of owners without restrictive conditions in their deeds, and the national government found it necessary to condemn any one of the estates, the adjoining owners or those occupying other portions of the tract could recover no damages whatever for the depreciation caused to their estates by the pubic use. Can it be possible that these owners, by mutual agreements or covenants that they or their successors in title will not do things which may be necessary for national defense, and by agreeing that these things are noxious and offensive to them, compel the United States to pay them for the right to do upon lands taken what is necessary for the protection of the United States? If such a right can exist against the state or the nation, and can be considered property, then only a mere device of conveying is necessary to defeat entirely the rule that depreciaton of property incidental to a public use does not constitute a taking, for private deeds may then provide in express terms against such uses .as may be necessary, in ease the government exercises the right of eminent domain. If these private conveyances are, as against the government and state, to be recognized as property, then the government by taking such uses takes private property, and must make compensation. * * * *409 While the owners may so contract as to control private business, and thereby increase the values of their estates, they are not entitled to so contract as to control the action of the government or increase the values of their lands by any expectation or relief that the government will not carry on public works in their vicinity, or that in case it does, it will compensate them for the loss due to the defeat of their expectation that it would not. Let us suppose that real estate owners in a seaside town resorted to by summer residents should mutually covenant that no school house should be erected upon their lands, and that such provisions should in fact enhance the value of their estates, must the town, in order to procure a suitable school site, pay for the depreciation due to the necessary public use? It would seem entirely immaterial whether private persons had contracted with reference to this subject or not. Each landowner holds his estate subject to the pubic necessity for the exercise of the right of eminent domain for public purposes. He can not evade this by any agreement with his neighbor, nor can his neighbor acquire a right from a private individual which imposes a burden upon the public in-the exercise of the right of eminent domain.”
This case was taken to the United States Circuit Court of Appeals and affirmed, the circuit court holding as follows:
“These particular conditions did not create a true easement as known to the common law in favor of other lot owners, nor were they intended to apply to public works, but merely to restrict ■what might be done by persons or business corporations in their own interests, and that under the circumstances the owners of lots not taken had no interest for which they were entited to compensation. Wharton v. United States, 153 Fed. Rep., 876.”
This case is an authority for the following propositions: (1) that the use of the Headlands of this island for national defense is not within the restriction; (2) that the covenant was intended to restrict private uses only; (3) that if intended to apply to public works, as well as private use, it is void against public policy, and (4) that a restrictive covenant as to uses to which land may be put, and as to the manner of building thereon, creates no interest in the land, nor easement appurtenant thereto requiring compensation when taken for public works under power of eminent domain.
The find'ng that the particular language of this restriction did not include a fort for national defense, and that it must be in *410 terpreted as restricting private use oniy, gives us no principle for application to the case at bar. The propositions, however, that a covenant which sought to restrict property from all uses inconsistent with its terms would be against public policy; and the proposition that a covenant restricting the manner of building upon land, and the uses to which the same may be put, créate no interest in land nor an easement appurtenant thereto and propositions pertinent to the issues involved in this case. I have already indicated my inability to distinguish between restrictive covenants preventing encroachments upon the enjoyment of light, air and view, and such as control the mode of making improvements and reguating the uses to which the property may lawfully be put. To my mind, the controlling principle is, whether the restrictive covenant is of value to the owner, enhancing the value of the property for the benefit of which it is made, and whether the owner suffers a monetary loss by its appropriation.
The suggestion, that a grant or restriction, which ignores the paramount right of the state to take for public use, is void as against public policy, is without force. To insert a clause recognizing such right would be surplusage. No one will question the right to take, not the obligation to pay for the thing approThe right of appropriation and duty to pay for the thing appropriated are reciprocal.
Says Lewis, Em. Domain, Section 224:
“When one conveys a tract of land upon condition that it shall not be used in a certain way, and this condition is imposed for the benefit of the remaining lands of the grantor, the latter has an interest in the tract conveyed in the nature of an easement, and may prevent a violation of the condition. * * •* When property subject to restrictive covenant is taken for public use, the owner of the property for whose benefit the restriction is imposed is entitled to compensation. ’ ’
In Hulan v. Murfin, 124 N. W. Rep., 571 (Mich.), decided in February, 1910, the Supreme Court of Michigan held:
“1. A valid building restriction may be binding on a city as well as an individual.
“2. Before a city can use a lot charged with a building restriction, for a purpose prohibited by the restriction, it must obtain *411 by purchase or condemnation the title of all owners of any interest therein.”
The bill alleged that Henry Post, being the owner of ten lots on Hurlbert avenue, in the city of Detroit, advertised the sale of said lots subject to a plan making the avenue a residence street, with certain restrictions, and that thereby and by certain valid contracts which he made to a person who purchased in reliance upon said publication and plan, he subjected all of the lots to its restrictions. The complainants claiming to be owners of some of the lots, filed a bill to restrain the city of Detroit from erecting a fire department building on certain of said lots, which the city had purchased and contracted for from Post. An injunction was asked for and refused. The writ of mandamus asked for in this case was denied, but in denying it, and as a reason therefor, in the opinion, Hooker, J., says:
“We are satisfied that a valid building restriction may be binding upon a city as well as an individual, and, before it can use a lot charged with such restriction for a purpose prohibited by the restriction, it must obtain by purchase or condemnation the title of all owners of any interest therein, and, when it has not done so, equity may properly intervene to preserve the status quo until such interests are acquired, provided the pleading and the evidence supporting the application show a reasonable probability of the validity and justice of complainants’ claim. As the bill was verified on information and belief, and there was no proof taken, we can not issue a mandamus to compel the allowance of an injunction.”
The evident logic of this text and decision is, that the appropriation works a loss of a valuable right of property in the land taken, and secured by the covenant in the claimants ’ deeds; and that, to take it away by the refinements of logic, without compensation to the owner, is to defeat rather than safeguard the constitutional guaranty of the inviolability of private property.
Being of the same opinion, I overrule the demurrer.